IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:03CR3004 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| HUGO BELTRAN-GOMEZ, | ) | |
| | ) | |
| Defendant. | ) | |

Hugo Beltran-Gomez has submitted a motion under 29 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 motion"). (Filings 79, 81.) Subjecting the motion to initial review under Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, I will dismiss the motion with prejudice.

I.

The defendant was found guilty of possession with intent to distribute 50 grams or more of a mixture containing methamphetamine (Count I), and with using or carrying a firearm in relation to a drug-trafficking crime, or possessing a firearm in furtherance of such crime (Count II), in violation of 21 U.S.C. § 841(a)(1) and (b)(1), and 18 U.S.C. § 924(c)(1)(A)(I). I sentenced him to 63 months in prison on Count I and 60 months in prison on Count II, to be served consecutively, followed by concurrent supervised release terms of 5 years. (Filings 45, 54.)

The factual background of this case is as follows.

The defendant was driving a sport utility vehicle north on 48th Street in Lincoln, Nebraska at approximately 3:00 a.m. on January 8, 2003. (Tr. 91, 93.)[1] Three law enforcement officers observed the defendant's vehicle come to a stop in the northbound traffic lane of 48th Street and turn off its lights. (Tr. 61.) The officers followed and approached the defendant's vehicle in two cruisers, with emergency lights activated. (Tr. 62.) The officers stood next to the defendant's vehicle and shone flashlights inside the windows on both sides of the vehicle. Two officers (Baehr and Alesch) were standing at the driver's side door and a third officer (Weber) was standing at the passenger's side door. (Tr. 64-65.)

The officers asked the defendant for "ID." (Tr. 65.) None of the three officers spoke Spanish (Filing 32, Tr. of suppression hearing, at 21.) The defendant does not speak English. (Tr. 199.) However, when the officers asked him for "ID," the defendant understood that the request for ID meant that he should produce his license and identification. (Tr. 199-200.)

While the officers were looking into the vehicle and at the defendant seated in the driver's seat, the defendant repeatedly used his hands to readjust the broken center console which was immediately to the right of the defendant. (Tr. 98.) After a few minutes and while the officers were attempting to get the defendant's identification, Officer Weber saw a gun in the console in the area just to the right of the defendant's knee. Officer Weber yelled that the defendant had a gun. (Tr, 51, 66.) All three officers immediately drew their duty weapons, pointed them at the defendant, and told him to put his hands up. (Tr. 84.) Though the defendant did not understand the verbal command to raise his hands, he raised his hands because weapons were pointed at him. (Tr. 199.)

---

[1]Filing 65 consists of pages 1-119 of the trial transcript. Filing 66 consists of the remainder of the trial transcript. I cite the trial transcript as "Tr. __," without reference to whether the cited material is contained in filing 65 or filing 66.

The defendant was removed from his vehicle, handcuffed, and taken to Officer Baehr's cruiser.  He was placed in the back seat of the cruiser with the doors shut, where he was unable to leave because there were no interior door handles.  (Tr. 100-01.)  After the defendant was detained in the squad car, two officers returned to the defendant's vehicle and saw in plain view a handgun sitting in the center console where a plastic piece of the console had broken off.  This was the portion of the console the defendant had been fidgeting with.  (Tr. 101-02.)  Officer Alesch moved the console to get a better look at the gun and observed small brick-like packages. (Tr. 103-04.)  The officers suspected the packages were drugs, and decided to call their supervisor to the scene and to call a canine unit for a drug sniff.  (Tr. 104.)  A supervising officer, a Spanish-speaking officer, and an officer with a drug dog arrived on the scene.  Only after the supervisor arrived, and after the gun and packages had been found, was it determined that the defendant would be charged with carrying a concealed weapon and the defendant was formally arrested.  (Filing 65, Tr. 104-105.) After these decisions were made, the defendant's vehicle was searched.  During a search of the defendant's vehicle, officers found a glass pipe containing white residue in a pocket on the driver's side door.  The pipe was the sort used for smoking drugs. (Tr. 105.)  Ultimately, the packages were found to contain methamphetamine.

The defendant's trial counsel filed a motion to suppress (filing 23) and an evidentiary hearing was held (filing 29).  The focus of the motion to suppress was whether the initial stop of the defendant's vehicle was a valid traffic stop.  The Magistrate Judge recommended that the motion to suppress be denied, as the initial stop of the car was justified by the need to investigate why a vehicle had stopped in the roadway and turned its light off.  He found that once the gun was observed, there was probable cause for an arrest.   (Filing 32, Tr. at 30.)   I adopted the recommendation and denied the motion to suppress.  (Filing 34.)

At trial, the defense was that the defendant had not intended to distribute the methamphetamine, but was a drug addict who bought a large quantity of drugs at a

cheap price and intended the drugs for personal use. The defendant was convicted.

Trial counsel filed an appeal, moved to withdraw, and filed a brief under Anders v. California, 386 U.S. 738 (1967) arguing that the evidence was insufficient to support the verdict. The sufficiency of the evidence was upheld on appeal. The circuit court reviewed the record independently, found no nonfrivolous issues, and granted trial counsel's motion to withdraw. United States v. Beltran-Gomez, 148 Fed. Appx. 568 (8th Cir. 2005) (also available at 2005 WL 2207004).

## II.

The defendant asserts that counsel rendered ineffective assistance for three reasons: (1) failure to raise a meritorious issue in the motion to suppress; (2) failure to adequately investigate; and (3) failure to raise sentencing issues and mitigating factors. I briefly review the applicable legal standard before considering these assertions.

In order to prevail on his claim that his counsel rendered ineffective assistance of counsel, the defendant must show (1) that "'counsel's representation fell below an objective standard of reasonableness,'" and (2) that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Nguyen v. United States, 114 F.3d 699, 703-04 (8th Cir. 1997) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). An evidentiary hearing is unnecessary if the movant makes an insufficient preliminary showing on either or both prongs. Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").

*Failure to Raise Meritorious Issues in Motion to Suppress*

The defendant asserts that his vehicle was searched after his initial detention but before he was arrested, and that this search either exceeded authority under Terry v. Ohio, 392 U.S. 1 (1968) or was unauthorized because it was not incident to an arrest. This syllogism is flawed.

The officers approached the defendant's vehicle because it stopped in the traffic lane of a city street with its lights off. This is a traffic violation and created probable cause to stop the vehicle. United States v. Coleman, 148 F.3d 897, 904 (8th Cir. 1998). While attempting to obtain the defendant's identification, one of the officers saw a handgun in the broken center console of the defendant's vehicle. Sighting of the handgun justified a protective sweep of the passenger compartment of the defendant's car, even though he had been placed in the police cruiser at the time of the search. Id. (when officers saw handgun clip during traffic stop, "observation of the clip justified a limited sweep of the passenger compartment" even though driver was in police cruiser at time of the vehicle search). Here, the packages of drugs and glass pipe were found in the passenger compartment of the vehicle during a protective sweep of the vehicle.

Alternatively, the search of the defendant's vehicle was within the scope of a search incident to arrest. E.g., United States v. Barnes, 374 F.3d 601, 603 (8th Cir. 2004), cert. denied, 543 U.S. 1079 (2005) (search of an automobile is incident to arrest even when the arrestee has exited the vehicle and has been handcuffed and placed in a patrol car prior to the search). At the time his vehicle was searched, the defendant was handcuffed and in a police cruiser. The fact that the search preceded formal arrest, or that the officers apparently did not believe the defendant had been arrested at the time they searched the passenger department of the vehicle, does not change the fact that this search was incident to arrest. United States v. Turpin, 920 F.2d 1377, 1386 (8th Cir. 1990) (search is justified as search incident to arrest "even

if it is conducted before the actual arrest, provided that (1) the arrest and the search are substantially contemporaneous, and (2) probable cause to arrest existed before the search."), cert. denied, 499 U.S. 953 (1991); United States v. Pratt, 355 F.3d 1119, 1124 (8th Cir. 2004) ("officer's uncommunicated subjective intent is irrelevant to the question of whether an individual has been seized," and when there is probable cause to arrest, standard for determining whether arrest has occurred is same as that for determining whether a seizure has occurred–whether a reasonable person in defendant's position would have felt free to leave).

The defendant also asserts that trial counsel was ineffective for failure to raise Miranda issues. (Filing 83 at 3 ("While the initial detention . . . may be argued to be justified as a Terry stop, there was absolutely no evidence at trial that Petitioner was ever read his Miranda rights . . . .").) Miranda issues arise only if there is a question whether statements should be suppressed, and there were no statements by the defendant introduced at trial. Counsel was not ineffective for failing to raise non-existent Miranda issues.

### *Failure to Adequately Investigate*

The defendant asserts that trial counsel must have failed to adequately investigate because he had not verified the chain of evidence before trial and because he had not seen the wallet and money that were presented as exhibits until they were introduced at trial. Assuming for purposes of this motion that these inactions constituted a failure to investigate, the defendant has not established that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Nguyen v. United States, 114 F.3d 699, 703-04 (8th Cir. 1997) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). He has introduced no evidence indicating that the two noted inactions constituted Strickland prejudice, or that there was other evidence that could have been

discovered during a reasonable investigation yet went undiscovered to his prejudice.

Contrary to the assertions in the defendant's brief, Bell v. Cone, 535 U.S. 685 (2002) does not hold that prejudice is presumed whenever there is a failure to investigate. In Cone, trial counsel opposed the prosecution during the guilt phase of a capital murder trial but did not ask for mercy after the prosecutor's final argument during the sentencing phase. The Supreme Court rejected the argument that prejudice was presumed from failure to oppose the prosecution at one specific point in the sentencing phase, finding that prejudice may be presumed under United States v. Cronic, 466 U.S. 648 (1984) only when there is a total failure to subject the prosecution's case to meaningful adversarial testing. Absent such a complete failure, the Strickland standard applies and prejudice must be established. Here, the defendant is not asserting, and could not assert, that trial counsel totally failed to subject the prosecution's case to meaningful adversarial testing. He must meet the Strickland standard and has failed to establish prejudice as required by that standard.

*Failure to raise sentencing issues and mitigating factors*

The defendant asserts that trial counsel exhibited a total disregard for his duty to research and advocate for his client because the sentencing transcript indicates that trial counsel had not read the sentencing recommendation prior to sentencing. (Filing 64, Sentencing Tr. at 2.) Given the manner in which I conduct sentencings and the summary nature of the sentencing recommendations, counsel's failure to read the sentencing recommendations prior to sentencing does not of itself establish prejudice. I will explain.

It is my practice to issue an order setting deadlines for various actions required after conviction and prior to sentencing. That order establishes, among other things, the specific date by which the probation office must provide the presentence report to counsel, a specific date for stating any objections to the presentence report, and a

specific date by which I will issue tentative findings indicating whether I intend to accept the presentence report. See, e.g., filing 46 (Order on Sentencing Schedule). If there are no objections to the presentence report, and if I make tentative findings that the presentence report is correct, the sentencing recommendation is merely a summary of the presentence report. That was the case here.

The order establishing the defendant's sentencing schedule provided that the probation office would provide the presentence report to counsel by February 17, 2004. (Filing 46.) On March 19, 2004, I issued on order containing my tentative findings of fact indicating that I believed the presentence report to be correct and setting a date for the parties to object to those tentative findings. (Filing 50.) Sentencing was March 30, 2004. Thus trial counsel had received the presentence report nearly a month and a half before sentencing, and had notice of my tentative finding that the presentence report was accurate over ten days prior to sentencing.

As was the case here, the typical sentencing recommendation is a short summary of the Guidelines calculations that are set out in greater detail in the presentence report. It also contains the probation officer's sentencing recommendation. In this case, the recommendation was four pages long.

Although it is true that counsel had not read the recommendation *before* the hearing,[2] the record reflects that Mr. Levy, the defendant's lawyer, was given, and took, the opportunity to read the sentencing recommendation *during* the hearing and before any sentencing issues were discussed. In fact, Mr. Levy, one of the most able and experienced defense lawyers who regularly appears before me, stated on the record that he had read the recommendation. (Filing 64, Sentencing Tr. at 3.)

---

[2]Counsel indicated that he had been out of the country when the probation officer sent him the sentencing recommendation by e-mail. (Filing 64, Sentencing Tr. at 2.)

As I told the parties, the sentencing recommendation suggested that I sentence the defendant "at the low end of the custodial guidelines range." (Filing 64 at 3.) After I recited the Guidelines calculations set forth in the presentence report, Mr. Levy stated that the defendant was prepared to proceed to sentencing. (Filing 64 at 4.) I then sentenced the defendant to the low end of the Guidelines. (Filing 64 . at 5.)

In short, there is simply no evidence (nor any reason to think) that Mr. Levy's failure to read the sentencing recommendation before the hearing harmed the defendant in any way. On the contrary, the record demonstrates that the failure to read the recommendation prior to the hearing did not harm the defendant.

The defendant further asserts that trial counsel was ineffective because he failed to adduce mitigating evidence, did not object to the offense level under the sentencing guidelines, and failed to move for downward departure. However, the defendant has submitted no evidence indicating there was any mitigating evidence, any error in calculating the offense level, or grounds for downward departure. This failure to establish prejudice is fatal to his claim. Contrary to defendant's argument, Glover v. United States, 531 U.S. 198 (2001) did not hold that prejudice is presumed from a failure to object to the offense level under the sentencing guidelines. Rather, Glover held that even a small increase in sentence resulting from *miscalculation* of the offense level could establish prejudice. There is no evidence of miscalculation here.

For the foregoing reasons,

IT IS ORDERED that the defendant's § 2255 motion (filing 81, as supplemented by filing 83) is denied with prejudice in all respects, and a separate judgment shall be entered accordingly.

January 31, 2007	BY THE COURT:

                                                               s/ *Richard G. Kopf*
                                                               United States District Judge